**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**KAREN ALLEBACK and BRUCE ALLEBACK, her husband,**

**Plaintiffs,**

**v.**

**ZIMMER, INC.,**

**Defendant.**

**Case No. ____________**

# COMPLAINT

Plaintiffs, KAREN ALLEBACK and BRUCE ALLEBACK, by their undersigned attorney, sue the Defendant, ZIMMER, INC., and allege:

## THE PARTIES

1. At all times material to this cause, Plaintiffs, KAREN ALLEBACK and BRUCE ALLEBACK, were and are citizens and residents of Largo, Pinellas County, Florida and are married and live together as husband and wife.

2. At all relevant times, Defendant, ZIMMER, INC., (hereinafter referred to as "ZIMMER" or "Defendant") was a corporation incorporated in the State of Delaware, with its principal place of business at 345 East Main Street, Warsaw, Kosciusko County, Indiana 46580.

3. At all relevant times, Defendant, ZIMMER, INC., was in the business of, and profited from, the design, manufacture, marketing, distribution and or sale of a total hip prosthesis, that contained an uncemented acetabular component, known as the "Durom Acetabular Component" (hereinafter referred to as the "Durom Cup").

4. At all relevant times, Defendant placed the Durom Cup into the stream of interstate commerce that was implanted into the Plaintiff, KAREN ALLEBACK in Largo, Pinellas County, Florida, and advertised, marketed, sold and/or distributed said "Durom Cup" either directly or indirectly to the Plaintiff, KAREN ALLEBACK, within the State of Florida.

**JURISDICTION AND VENUE**

5. This is an action for damages that exceed the sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS and this Court has diversity jurisdiction pursuant to 28 USC 1332.

6. This action arises from injuries sustained by the Plaintiff, KAREN ALLEBACK, when a defective Durom Acetabular Component, that was designed, manufactured and sold by Defendant, was surgically implanted in the Plaintiff on or about July 13, 2007 in Largo, Pinellas County, Florida.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. 1391 in that Plaintiff purchased, was implanted with, and was injured by the Durom Acetabular Component in Pinellas County, Florida and Plaintiffs' damages accrued in Pinellas County, Florida, which is in the Middle District of Florida.

8. Upon information and belief, at all relevant times, Defendant was present and transacted, solicited and conducted business in the Pinellas County, Florida, through its employees, agents and/or sales representatives, and derived substantial revenue from such business in this District.

9. Defendant is conclusively presumed to have been doing business in Florida and is subject to Florida's long-arm jurisdiction.

10. At all relevant times, Defendant expected, or should have expected, that its acts and

omissions would have consequences within the State of Florida, including Pinellas County.

## GENERAL ALLEGATIONS

### A. The Durom Acetabular Component or "Durom Cup"

n

11. On or about March 16, 2006, Defendant, ZIMMER, INC., received approval from the Federal Food and Drug Administration to market in the United States a total hip prosthesis that contained a Durom Acetabular Component or Durom Cup.

12. The Durom Cup was a non-cemented cup metal cup with a coating of titanium plasma spray and was designed to act as an artificial joint socket and allow the patient's bone to grow into or around it, thus keeping the cup or artificial socket in place.

13. This Durom Cup for which Defendant received approval by the FDA had been marketed, sold and used outside the United States since 2003.

14. Problems with the Durom Cup first became publicly known in or about April, 2008, when Larry Door, MD., a world-renowned orthopedic surgeon and Director of the Dorr Institute for Arthritis Research and Education, wrote a letter dated April 22, 2008 to his colleagues at the American Association of Hip and Knee Surgeons, warning of the failures and defects associated with Zimmer's Durom Cup. In that letter, Dr. Dorr stated:

> "This_failure rate has occurred within the first two years. In the first year the x-rays looked perfect. We have revised four that did not have any radiolucent lines or migration (and John Moreland revised one). These early cups fooled us, but the symptoms were so classic for a loose implant that we operated the patients. When we hit on the edge of the cup it would just pop free. As time goes by the cups begin developing radiolucent lines. We now have one cup at two years that has actually migrated a short distance. It has tilted into varus. We do not believe the fixation surface is good on these cups. Also there is a circular cutting surface on the periphery of the cup that we believe prevents the cup from fully seating. We stopped using the cup after the first revisions."

According to Dr. Dorr, who was also a consultant for ZIMMER, INC., patients who had been implanted with the defective device were suffering agonizing pain only months after a routine hip replacement.

15. In early, 2008, prior to writing that letter, Dr. Dorr had reported his concerns about the defective device to Zimmer executives, but his complaints fell on deaf ears. Rather, Zimmer blamed Dr. Dorr's own surgical techniques for the problems his patients experienced, even though Dr. Dorr, a veteran of more than 5,000 hip replacement surgeries, is one of the most renowned surgeons in the world.

16. On April 22, 2008, after having been rebuffed by the Defendant, Zimmer, Dr. Dorr took his concerns to the American Association of Hip and Knee Surgeons. In late May, Defendant finally informed surgeons that it was investigating Dr. Dorr's complaints but Defendant did not suspend sales at that time, as Dr. Dorr had recommended.

17. After Dr. Dorr informed colleagues about his experience with the Durom System, Dr. Dorr received reports from other surgeons relating the same problem. According to Dr. Dorr and other physicians, x-rays of patients who received the defective device showed that the socket was separating from the bone, rather than fusing with it.

18. Not surprisingly, Defendant responded similarly to other physicians' complaints and deflected the blame to their lack of training. Defendant's sales representatives were instructed to request those physicians to undergo additional training on the insertion procedures of the device.

19. On July 22, 2008, after numerous complaints from surgeons concerning the Durom Cup, Defendant, ZIMMER, INC., announced that it was temporarily suspending

the marketing and distribution of the Durom Cup in the United States only, pending an update of labeling of the device to provide more detailed surgical technique instructions to surgeons, and pending the implementation of a surgical training program in the United States. According to Defendant's own investigation, some clinics using the Durom System experienced failure rates as high as 5.7%.

20. On or about August 16, 2008, Defendant issued an updated notice to surgeons, stating that updated labeling and surgical training opportunities were now available.

21. On or about October 29, 2008, the federal Food and Drug Administration (FDA) published its weekly Enforcement Report which advised that the Zimmer Durom Cups had been voluntarily recalled by the Defendant on July 22, 2008.

**B. The Incident**

22. On or about July 13, 2007, at Largo Medical Center in Largo, Pinellas County, Florida, the Plaintiff, KAREN ALLEBACK, was implanted with a left total hip prosthesis that was designed, manufactured and sold by the Defendant, and which contained a defective Durom Cup, Reference Number 01.00214.150, Lot number 2357526. The surgeon who performed the implant was Ahmad Nematbakhsh, DO of Alexander Orthopaedic Associates, Largo, Pinellas County, Florida.

23. Following the surgery, Mrs. Mack's wounds healed without infection, and x-rays showed the hip replacement to be properly positioned and the hip replacement suffered no impacts.

24. Despite these ideal conditions for a hip replacement, on or about December 20, 2007, Mrs. Alleback was seen by Vladmir Alexander, MD, an orthopedic surgeon, for pain in her left

hip.

25. On or about January 25, 2008, Mrs. Alleback underwent an x-ray of her left hip, which showed that the cup was vertical and the femoral head was somewhat uncovered.

26. On or about April 7, 2008, at Palms of Pasadena Hospital, St. Petersburg, Pinellas County, Florida, Dr. Alexander performed an extensive and complicated revision surgery to replace the failed left hip prosthesis. At that time, Dr. Alexander prosthetic loosening of the left hip "over quite some time".

27. As a direct and proximate result of Defendant placing the defective product into the stream of commerce, Plaintiff has suffered, and continues to suffer, injuries and damages within Pinellas County, Florida, including but not limited to: past, present and future physical and mental pain and suffering; past, present and future medical, hospital, monitoring, rehabilitative and pharmaceutical expenses, and lost wages.

**C. Zimmer's Misconduct**

31. At all relevant times, ZIMMER had exclusive control over the design, manufacture, inspection, quality control, marketing and distribution of the defective Durom Cups.

32. The Durom Cups were in a defective condition and unreasonably dangerous to patients who were implanted with those devices.

33. Prior to the sale and distribution of the Durom Cup, ZIMMER failed to conduct sufficient testing and/or inspections of the device.

34. Further, prior to September 24, 2008, ZIMMER knew, or should have known, that the Durom Cup would not be inspected for defects in manufacturing after it left Defendant's control and prior to the implantation into Plaintiff and other patients.

35. Based upon the information and adverse event reports received by ZIMMER, it was incumbent upon Defendant to report these events to the FDA, to the medical community and to the public at large to prevent patients from having to undergo unnecessary, duplicative and painful surgeries.

36. ZIMMER's failure to do so prevented Plaintiff from making an informed decision that would have allowed her to weigh the risks of the implant procedure against its purported benefits and compare these risks and benefits to other treatment alternatives.

37. In addition, after receiving notice from numerous surgeons that there were severe problems associated with the implantation of the Durom Cup, ZIMMER, through its agents and employees, continued to promote the use of the Durom Cup to physicians who would be implanting the devices into patients such as Plaintiff, and failed to fully and timely inform the public, the FDA and the medical community about the defect in the device.

38. Prior to the recall on July 22, 2008, Defendant failed to issue any warning as to the defect in the Durom Cup to the Plaintiff, to her physicians, to the general public, or to the FDA or to any other federal authorities.

39. Further, after the recall and prior to implantation of the device into Plaintiff, ZIMMER failed to provide adequate warnings to Plaintiff, her physicians and the public regarding the recall or regarding the dangerous defect in the device.

40. As a result, Plaintiff did not know that the device had been recalled, and did not know of the full risks associated with the implantation of the Durom Cup and was not made aware of the risks and dangers by the Defendant.

41. Had Plaintiff known of the recall and of the risks and dangers associated with the

defect in the Durom Cup, Plaintiff would not have permitted the device to be implanted.

**COUNT I**
**(Strict Liability and Defective Design)**

42. Plaintiffs incorporate and reallege paragraphs 1 through 41 into Count I of this Complaint.

43. At all times material hereto, Defendant, ZIMMER, engaged in the business of designing, developing, manufacturing, testing, packaging, labeling, distributing, marketing, selling, and/or distributing, the Durom Acetabular Component (Durom Cup).

44. The Durom Cup was intended for use in hip replacement procedures for consumers, and Plaintiff was a consumer and relied upon the manufacturing safety of the product.

46. At all relevant times, Defendant expected the Durom Cup to reach, and it reach, consumers in the State of Florida, including Plaintiff, without substantial change in the condition in which it was sold.

47. The Durom Cup was defectively designed, manufactured, and/or tested so as to be unreasonably dangerous to consumers and to Plaintiff at the time it was placed into the stream of commerce, in that:

a) When placed in the stream of commerce, the device contained unreasonably dangerous design and manufacturing defects and was not reasonably safe as intended to be used, subjecting the Plaintiff to an unreasonably high risk of failure of the total hip replacement and the necessity of further invasive surgery;

b) When placed in the stream of commerce, the device created unreasonably high risk of failure which exceeded the benefits of the device;

c) When placed in the stream of commerce, the device was more dangerous than an ordinary consumer would expect and more dangerous than other similar prosthetic hip components that were already on the market;

d) When placed in the stream of commerce, the device had been insufficiently tested, both pre-market and post-market;

e) The device was marketed in such a way that was known to the Defendant to cause an unreasonably high risk of failure, which outweighed any potential utility.

48. The Durom Cup that was implanted into the Plaintiff had not been materially altered or modified prior to the implantation of the device.

49. Plaintiff was a foreseeable user of the device and the device was implanted into her for its intended purpose, a total hip replacement.

50. Had the Durom Cup not been defective, Plaintiff would not have sustained the injuries alleged herein.

51. As a direct and proximate result of the defective condition of the Durom Cup, the Plaintiff, KAREN ALLEBACK, was implanted with the Durom Cup and suffered loosening of the cup, painful failure of her left hip replacement, and an additional surgery to revise the hip replacement.

52. As a further proximate result of the defective condition of the Durom Cup, Plaintiff suffered debilitating physical pain and mental suffering; was required to undergo a additional invasive surgery; incurred substantial hospital, medical, nursing and rehabilitative expenses therefrom; suffered emotional distress, anxiety, depression and disability; lost wages and future earning capacity; lost quality of life, and all of these injuries are permanent and continuing.

WHEREFORE, Plaintiff demands judgment against Defendant, ZIMMER, INC., for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT II
### Strict Liability – Failure to Warn

53. Plaintiffs reallege and incorporate the General Allegations contained in Paragraphs 1 through 41 in Count II of this Complaint.

54. The Durom Cup that was implanted into the Plaintiff, KAREN ALLEBACK was defective and unreasonably dangerous when it left the possession of the Defendant in that:

a) The product contained insufficient warnings to alert consumers and their prescribing physicians that the Durom Cup posed an unreasonably high risk of loosening once implanted, which in turn, caused failure of the total hip replacement for which it was used;

b) Defendant's promotional materials, labeling and instructional materials that accompanied the Durom Cup were inadequate and misleading to consumers and their prescribing physicians;

c) Even after Defendant received notice from reputable medical sources prior to the sale of the device to the Plaintiff, that the product presented an inordinately high risk of failure and harm to the consumer, Defendant knowingly and deliberately failed to remedy the known defects in the device and failed to warn the public, including Plaintiff, of the serious risk of injury and failure occasioned by the defects in the device;

55. The Defendant, as manufacturer of the Durom Cup, is held to the level of knowledge of an expert in the field of that type of prosthetic device.

56. As an expert in the field, Defendant had a duty to warn its consumers and prescribing physicians of the dangers associated with the device and failed to do so.

57. Plaintiff's prescribing physician prescribed the Durom Cup to be used for its intended purpose, i.e., a total hip replacement.

58. At the time Plaintiff's physician prescribed and implanted the device, the physician did not have substantially the same knowledge as the Defendant about the unreasonably high

risks of loosening of the acetabular cup because Defendant failed to provide adequate warnings of those risks to him.

59. As a direct and proximate result of Defendant's failure to warn of the defective condition of the Durom Cup, the Plaintiff, KAREN ALLEBACK, was implanted with the Durom Cup on July 13, 2007 and suffered loosening of the cup, painful failure of her left hip replacement, and an additional surgery to revise the hip replacement.

60. As a further proximate result of Defendant's failure to warn of the defective condition of the Durom Cup, Plaintiff suffered debilitating physical pain and mental suffering; was required to undergo an additional invasive surgery; incurred substantial hospital, medical, nursing and rehabilitative expenses therefrom; suffered emotional distress, anxiety, depression and disability; lost wages and future earning capacity; lost quality of life, and all of these injuries are permanent and continuing.

WHEREFORE, Plaintiff demands judgment against Defendant, ZIMMER, INC., for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

**COUNT III**
**Negligence**

61. Plaintiffs incorporate and reallege paragraphs 1 through 41 into Count III of this Complaint.

64. At all times material hereto, Defendant, ZIMMER, directly or indirectly, created, manufactured, assembled, designed, sterilized, tested, packaged, labeled, marketed, promoted, advertised, sold and/or distributed in the state of Florida, the Durom Acetabular Component (Durom Cup).

65. At all relevant times, Defendant owed a duty to the public and to the Plaintiff, KAREN ALLEBACK, to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, testing, labeling, assembling, packaging, distribution, promotion and sale of the device.

66. Defendant negligently breached that duty to the Plaintiff in that:

a) Defendant designed, manufactured and sold the device that it knew or should have known created an unreasonably high risk of loosening and failure to patients, including Plaintiff, in whom it was properly implanted;

b) Defendant failed and/or refused to include adequate warnings with the device that would alert Plaintiff and his prescribing physician to the potential risks and serious side affects of the device;

c) Defendant failed and/or refused to adequately and properly test the device before placing the device on the market;

d) Defendant failed to conduct sufficient testing on the device both before and after the device was placed on the market which, if properly performed, would have shown that the device had serious side effects, including, but not limited to, loosening of the cup and failure of the total hip replacement;

e) Defendant failed to adequately warn the Plaintiff or her prescribing physician that the device caused or was associated with an unreasonably high risk of loosening, pain and discomfort, and disability;

f) Defendant failed to warn, or adequately warn the Plaintiff or her prescribing physician that the device created a high risk of loosening and failure than another similar device currently on the market;

g) Defendant failed to provide adequate post-marketing warnings or instructions to the Plaintiff and/or her prescribing physician of the significant risk of injury and failure of the total hip replacement associated with the device;

h) Defendant failed or refused to adequately label the device to warn the Plaintiff and/or her prescribing physician of the unreasonably high risk of loosening of the device after it was implanted into patients;

i) Defendant placed an unsafe and defective product into the stream of commerce.

j) Defendant underplayed the significant risk of loosening of the device and resulting failure of total hip replacements to the public, including the Plaintiff and/or her prescribing physician in order to make a profit from sales of the device.

67. Defendant knew or should have known that Durom Cup caused unreasonably dangerous risks and serious side effects of which the Plaintiff and her prescribing physician would not be aware, but nevertheless advertised, marketed, sold and distributed the device knowing that there were safer comparable products for hip replacements.

68. As a direct and proximate result of Defendant's negligent acts and omissions, the Plaintiff, KAREN ALLEBACK was implanted with the Durom Cup on July 13, 2007 and suffered loosening of the cup, painful failure of her left hip replacement, and an additional surgery to revise the hip replacement.

69. As a further proximate result of Defendant's negligent acts and omissions, Plaintiff suffered debilitating physical pain and mental suffering; was required to undergo an additional invasive surgery; incurred substantial hospital, medical, nursing and rehabilitative expenses therefrom; suffered emotional distress, anxiety, depression and disability; lost wages and future earning capacity; lost quality of life, and all of these injuries are permanent and continuing.

WHEREFORE, Plaintiff demands judgment against Defendant, ZIMMER, INC., for damages, as well as all costs of this action and a trial by jury of all issues to be tried.

## COUNT IV
## Culpable Negligence

70. Plaintiffs reallege and incorporate Paragraphs 1 through 41 into Count IV of this Complaint.

71. At all times material to this cause, Defendant, ZIMMER, had actual knowledge that

certain lots of the Durom Acetabular Component which it manufactured and sold, presented a foreseeable and severe health hazard to the consumers of the product, including loosening of the cup, pain, disability and the need for invasive, painful revision surgery as set forth herein.

72. Despite Defendant's actual knowledge of the gravity of injury foreseeably caused by the product, Defendant acted with gross negligence and willful and wanton disregard of the safety of the general public and of Plaintiff when it knowingly and intentionally continued to manufacture, market, and sell the Durom Cup so as to maximize its sales and profits at the expense of the health and safety of the public.

73. ZIMMER's culpable negligence includes, but is not limited to, continuing to promote the use of the Durom Cup while providing no warnings of defects even after ZIMMER knew, or should have known, of the increased risks associated with some lots of Durom Cups.

74. Such warnings would have dissuaded medical providers from recommending these products to the Plaintiff from choosing to have the product implanted in her.

75. The aforementioned actions of Defendant constituted knowing and intentional misconduct, and/or conduct undertaken with reckless, willful and wanton disregard for the safety of consumers such as Plaintiff, and such conduct was at all times ratified by the Defendant.

76. As a direct and proximate result of Defendant's culpable negligence, the Plaintiff, KAREN ALLEBACK, was implanted with the Durom Cup on July 13, 2007 and suffered loosening of the cup, painful failure of her left hip replacement, and an additional surgery to revise the hip replacement.

77. As a further proximate result of Defendant's culpable negligence, Plaintiff suffered debilitating physical pain and mental suffering; was required to undergo an additional invasive

surgery; incurred substantial hospital, medical, nursing and rehabilitative expenses therefrom; suffered emotional distress, anxiety, depression and disability; lost wages and future earning capacity; lost quality of life, and all of these injuries are permanent and continuing.

WHEREFORE, Plaintiff demands judgment against Defendant, ZIMMER, INC., for compensator and punitive damages, as well as all costs of this action and a trial by jury of all issues to be tried.

**COUNT VI**
**Consortium Claim of BRUCE ALLEBACK**

78. Plaintiffs reallege and incorporate paragraphs 1 through 77 into Count VI of this Complaint.

79. At all relevant times, Plaintiff, BRUCE ALLEBACK, was the husband of KAREN ALLEBACK, and, as a result of the injuries sustained by his wife as hereinabove alleged, Mr. Alleback has lost the services, support, companionship, affection and consortium of his wife, and will continue to lose said services, companionship, affection and consortium in the future.

80. In addition, as the husband of KAREN ALLEBACK, BRUCE ALLEBACK has in the past and will in the future become obligated to pay medical expenses on behalf of his wife.

WHEREFORE, Plaintiff, BRUCE ALLEBACK, demands judgment for damages, costs and interest against the Defendant, ZIMMER, INC., a trial by jury and such other relief to which the Plaintiff may be justly entitled.

Dated this 26 day of January, 2011.

/s/ Joseph H. Saunders

Joseph H. Saunders, Esquire
SAUNDERS & WALKER, P.A.
P. O. Box 1637

Pinellas Park, FL 33780-1637
(727) 579-4500, FAX (727) 577-9797
SPN 228977 FBN 341746
Attorney for Plaintiffs
joe@saunderslawyers.com